Thank you, your honor. May it please the court, my name is Torrence Coburn and I represent Cindy Pedersen in her wrongful discharge claim against TJ Maxx. TJ Maxx argues that its interpretation of its own company policy is entitled to deference. However, it is actually TJ Maxx's interpretation and its application of that policy that demonstrates both that Cindy Pedersen did not violate the policy and that good cause did not exist to terminate her appointment. To what extent do we second guess, are we allowed to second guess the company's judgment? I mean, she did something and they found it inappropriate and disruptive and defied her for that reason. To what extent do we second guess the judgment? There's no claim here of pretext that there was something else going on. It wasn't pretext for race or sex or something else, right? Yes, your honor, you're correct. There's no claim of pretext. We're just considering whether the reason they gave was good enough. Yes, and one, I think, very illustrative or one piece of evidence that demonstrates that it wasn't good enough is that in the past, other supervisory employees had engaged in the exact same conduct, i.e. drinking with subordinates on business trips that Cindy Pedersen was fired for, and they weren't terminated. The Wrongful Discharge Act requires that somebody be discharged for good cause, which is not satisfactorily performing the duties of their job, being a disruption to the... Well, usually when we hear a claim like that, we say X, Y, and Z did the same thing. Plaintiff didn't do it. And there's usually a punchline, X, Y, and Z were white. Plaintiff is black or female, whatever. So the explanation must be some prohibited motive. I don't think I remember a case where I've seen it where it says, well, X, Y, and Z were not white. Well, maybe they made a mistake with X, Y, the prior one. So maybe they say, we've had too much of this, we have tightening up our policy. Unless there's a pretext, don't they have some amount of latitude to make judgments as to when... Your Honor, the rule or the reason can't be false, arbitrary, or capricious. I thought you were relying on the Montana statute that creates a definition of good cause that said you can't be fired for drinking. We're actually relying upon that entire statute, one part of it, and I certainly was hoping to address that part also. But in the brief, the initial brief, both before the district court as well... She wasn't fired for drinking, of course. She was fired for... Drinking with employees, including an employee that is not of any drinking age. It wasn't... If she sat in her hotel room or even in a public place and had a drink or several drinks, that wouldn't have... It's not a drinking. It was drinking with subordinates while on a business trip. Well, the question really is, what was the real reason she was fired? If she was fired for a reason other than that she was drinking with subordinate employees, for example, if she was fired because her boss, Penny, was trying to get rid of older employees and because her boss, Penny, and she had been butting heads and that this is just a pretext, I assume that that's a violation of the Montana Good Cause Statute. That certainly would be, Your Honor. The question is whether her version of the story, that is to say Ms. Peterson's version of the story, is true. Because she says, I got fired because Penny didn't want me around because I was old and we were butting heads. And I've been on trips where we do drinking. Supervisors have never been fired. Did Dennis Lattin know about this? Well, actually, Dennis Lattin told me he's taken out his employees after meetings and stuff and drank. So he goes, I understand. And then meanwhile, we got a deposition... Excuse me, we've got a declaration from Dennis Lattin who says it's a strict policy, but it's a strict policy he apparently doesn't himself observe. So the question is whether we believe her. Exactly, Your Honor. And she did state in her deposition that, I believe is on the record, that she did believe that she was terminated because she and Penny, who became the store manager after she was already promoted to assistant merchandising manager, that they essentially did not see eye to eye. And like you said, they butted heads. That certainly is the reason that Cindy put forth that she was terminated. And I think going back to the... Well, I guess in a sense, then, it is a pretext case. Your Honor, certainly there was... It may not have been race or sex or anything of that sort, but... See, there are two different possible propositions. One of them is, this was the reason, this was the real reason they fired me, and it's not a good enough reason. The other proposition is, this was not a good enough reason, and they just put it forward because there were other reasons. That's a pretext case. That's a pretext case. That's why I asked you... The first thing I asked you is whether this is a pretext case, and you said, I think you said no. I'm not gonna hold you to it. I'm just trying to figure out the case. Certainly, I think that certainly Cindy believed that there is pretextual reasons, but getting to what you stated... So what is the real reason, as far as the record is showing? As far as Cindy is concerned, the real reason for her termination is that she and Penny, her immediate supervisor, butted heads, and essentially, Penny wanted to get rid of her. She got rid of pretty much everybody that was part of the previous regime. That is Cindy's statement. But getting back to also what you stated, aside from that, the reasons that they gave weren't proper and weren't good enough and don't rise to the level of good cause. Okay, so can I reiterate my question? Because I'd like to know what your view is of the Montana statute that specifically exempts from good cause the lawful use of a product. In other words, drinking off hours... Certainly. Because there's nothing illegal about drinking beer. The statute was not discussed by Judge Malloy. You are correct. I don't know if it was brought to his attention or not. It was. In fact, that was... It doesn't discuss it, so I don't know what his view of it was. He emphasized, not the drinking generally with subordinates, but he emphasized the fact that there was a minor there, and that would not be a lawful activity. So I'm trying to figure out why, where you think the Montana statute fits into your case as saying they can't rely on her drinking beer after hours as part of good cause. What's the relevance of the statute? How would it change the outcome if we were to fault the district court for not telling us why the statute didn't prohibit what they did? My belief is that the district court, in looking... In making his decision, he relied upon the fact that he stated this was job related. It was a job related business trip, and so therefore it was exempted out of the statute. However, I think given the way that TJ Maxx has previously interpreted their policy such that they haven't terminated other supervisors for drinking with subordinates while on business trips would seem to indicate that that wasn't job related when everybody's off the clock, and then you're drinking with your subordinates. So therefore, it would be a lawful use of a legal product, essentially alcohol, off duty, off premises, and so therefore it could not statutorily constitute good cause. Well, I think it could constitute good cause. I view this as, frankly, as a pretext case. If the only thing we had in the record was she went out after hours with employees who were her subordinates, with one person who was young, turns out he's underage, she says in her deposition she did not know that he was underage. She says in her deposition she can't remember whether he was drinking or not, but he was clearly in the room and we got evidence from others that he was drinking. And then they stay up until somewhere between three and six in the morning, and the motel room's a bit of a mess afterwards. If I'm the employer and that happened, I think that's good cause. My question is not then whether that could be good cause, my question is whether that's the real reason. And there's a lot of evidence in here, if you believe your client, that that's not the real reason. Certainly, Your Honor, I would agree entirely with you that based upon her statements and her beliefs, that yes, she was essentially shoved out, the entire old regime was shoved out when Penny Dickey came in and took over. My client was actually promoted by Dennis Lattin, because at that time, Penny Dickey was not in place and they were in between supervisors. And so I would agree that there is pretextual reasons there also. That's a pretty good argument that Judge Fletcher has made for you. I don't remember seeing it in your blue brief. Pardon? I said this is a pretty good argument that Judge Fletcher has made for you, but I don't see it in your blue brief, which is where all arguments that you rely on have to be. Where is this argument in your blue brief? This is a pretext, they could have filed it for this reason, this is not the real reason, and another reason. Want to file a supplemental brief? I certainly would. Why don't we start with finding out whether it is in this brief, and then we can, if it's in this brief, you're okay. I must say, I did not understand, this is why I asked the question to begin with about pretext. I think I used the word pretext, but anyway, that's what I was getting at, because I didn't think it was in your case. Maybe it is, and I missed it. And it was developed in the record before the district court. Lots of stuff happens before the district court, but our rule is that it has to be in the blue brief for us to consider an appeal. Otherwise, we would be calling district court records for all sorts of errors on our own. Certainly, Your Honor, and as much as I did not write this brief, but I'm actually arguing the brief, I could not tell you for positive, I don't believe the pretext argument was developed within our district court. Okay. That's a little bit of a problem, isn't it? I, in all honesty, don't believe it's a problem, because I think that still, their previous actions, TJ Maxx's previous actions, their stated reason, i.e. the conflict of interest policy, which if we look at, there's no mention anywhere of drinking alcohol. In fact, everything deals with things such as nepotism, having a familial or romantic relationship with somebody that you're supervising, or gaining a financial benefit through knowledge of TJ Maxx procedures that is to the detriment of TJ Maxx. I think all of those things, their reliance upon that inapplicable policy, all those demonstrate that there is no good cause to Terminator, regardless of whether pretext was developed or not. You've got less than a minute. Do you want to save that for a bottle? Yes, I would. Okay. We'll hear from the other side. Good morning, your honors. May it please the court, William Dugan on behalf of Defendant Appley. Rather than go through what I had planned to say to the questions that you asked during the last presentation, first of all, on the pretext issue, we addressed at pages 53 and 54 of our brief that that issue has been waived. It was not raised in the appellant's brief before this court, and I do not believe it was raised before the district court either. However, if... Well, it was. There was a pre... I mean, the district court rules that there's insufficient evidence in support of defining a pretext. We actually raised that, your honor, in our brief. I believe it was not... This book was not raised by Ms. Peterson in the... But if the district court is aware of the argument, responds to the argument, I think it's in front of the district court, and the district court has not been saying about sandbag. He thought about it, and he rejected the argument. That's true, your honor, but I believe that it's not, obviously, before this court, because the appellant chose... Supplemental briefing. You could, and obviously, if you would ask the parties for supplemental briefing, we can do that, but I believe it has been... Assume for the moment that we have supplemental briefing, and the question is without any difficulty in front of us. How do you respond to the pretext argument based on the evidence that's in the deposition from Ms. Peterson? Sure. I think that the one person that, for the pretext argument they rely upon is the... Ms. Dickey, the store manager. And the phone call did come in to Ms. Dickey from one of the employees who was on the trip, actually came in to an employee called her mother, and said... And obviously, they came in to Ms. Dickey. Ms. Dickey then called the hotel, talked to the hotel manager about the room being a mess, and then Ms. Dickey informs her manager, Mr. Lattin. The room being a mess? The room being a mess, and there were bottles and... I don't think I've ever left a hotel room that wasn't a mess. Well, I hope your honor, it was... This is... You pull the bed, make sure you haven't forgotten stuff. Well, the record was actually more than that, that there were... Was there a complaint from the hotel? There was not a complaint from the hotel, but there was a complaint from one of the employees who Ms. Peterson was supposed to supervise. Why is it that you can't just answer my question? It was not a complaint from the hotel. Okay, did the hotel send a bill for damage to the room? That's not in the record. I do not know the answer to that question, but it's not in the record. Obviously, I'm asking you what's in the record. Is there anything in the record that there was extra expense? No. So was there anything... Was a police call? Again, no, because it's not in the record. As far as the record is concerned, were there complaints from other guests about the carrying the zone in the room? Was it... Was it so noisy? Again, no, from not in the record. Although there was a complaint from... Was it Dickie who had the room next door and said he kept it away? Dickie was actually the store manager. There was complaints from other employees that Ms. Peterson was supposed to supervise. When you say... They were in the room next door. Correct, and they kept them up until... And they gave written statements until 6 AM, frankly, the party that was next door with Ms. Peterson and four of her subordinates. When you say complaints, they complained to her? They complained... To whom did they complain? Well, the original... The original complaint came in to... The original report was from one of the employees to her mother, who then complained to Ms. Dickie, who was the store manager. I'm sorry, you think talking to your mother is a complaint? No, but I do believe that writing a statement when your district manager asks you to... Of what happened, and you... But the employee didn't complain to the management, didn't say, hey, I was on the strip, I was disrupted. This is somebody talking to her mother, and the mother decides to call the store manager. Correct, but in the record, there are statements by the employees that I would submit. The truth of, I was kept up until 6 AM, that I was afraid to, and this is the only... I was afraid to drive home with Ms. Peterson because of her being up until 6 AM, and who knows if she's still intoxicated or not. I would submit that those are reports and complaints. The evidence of 6 AM, of course, is disputed. Ms. Peterson says she was in bed by 3. She does say that she believes that she was in bed by... Well, I mean, she believes it was herself, right? I mean, so if she's to be believed as to what she believes, she was in bed by 3. Then they got up late, they had breakfast, I believe, at 11 o'clock, and she might have been afraid, but we're not talking about somebody who goes on a bender until 6 AM and starts driving at 7. That is true, but again, we do get back to the pretext question. The pretext, their whole case is based upon Ms. Dickey, the store manager, supposedly having it out for Ms. Peterson. The testimony in the deposition is very clear that Ms. Dickey, as the supervisor, has it out for her and a lot of others. She's gonna do it her way. This is her store. She gets rid of the old people. Some of them are forced to quit. Some of them are fired. That's the deposition testimony from Peterson. There is speculation from Peterson that I believe a lot of it... That is testimony from her. She names the people. Right. And she says, she recounts a conversation or a conversation she's had with Ms. Dickey. So it's testimony, it's evidence, and the jury can believe it or not. I don't know whether it's true or not, but that's what she says. But I believe that, Your Honor, that focusing on Ms. Dickey, Mr. Lattin was the one who conducted the investigation after the initial report, and Mr. Lattin was the one who got statements from the employees, and Mr. Lattin was the one who made the decision without Ms. Dickey to terminate Ms. Peterson's employment. So all this focus on Ms. Dickey, I believe is... And who called her to say she was fired? I do not know off the top of my head, Your Honor. Ms. Dickey. It may have been Ms. Dickey. I do not know the answer to that question off the top of my head. Ms. Dickey. And who started the investigation? The investigation was... Most likely, if you're looking for the manager to start the investigation, that would be Ms. Dickey because the phone call came in to her from the employee's mother. But then Mr... And this Mr. Lattin, this is Dennis, right? Correct. So the deposition testimony from Ms. Peterson is, actually Dennis Lattin had told me that he's taken out his employees after meetings and stuff and drank too. And he goes, I understand. This is Lattin's now declaration. THJX has strict policies regarding the consumption of alcohol during job related activities. A job related activity is any activity performed in furtherance, including activities during, on a business trip. In furtherance policy, THJX prohibits managerial employees from consuming alcohol with supporting employees during store based business trips. I'm not sure I'm gonna be terribly comfortable putting Mr. Lattin on the stand with this declaration up against Ms. Peterson who says, yeah, he did it himself. I believe... We've got conflict here in the testimony. I don't think that the conflict, Your Honor, respectfully is as dramatic as... Well, I just read you the evidence. You can call it dramatic or not dramatic. Well, the actual... So it's THJX policy that if employees go out to dinner and they have a glass of wine or beer with dinner, that that's a violation of company policy? No, and we've never taken that position. What we've taken the position is that when... It sounds to me that's what... So Mr. Lattin just said, wrote, wrote? No, what we've said before is, and we said this in the briefing down below too, that if a... And the testimony was... It's not the briefing, it's what's in the record. It's the fact, so the fact that you can now rephrase it, but it sounds to me like what he's saying is, we think that when you're on a company trip, whatever you do is on company time. So what if an employee is on a company trip and is visiting a friend that's living in that town and has dinner and a drink with that friend? Is that on company time? A drink with a friend that is not an employee of TJX? No. How about sex? They're old friends or maybe a fiance or a boyfriend or whatever, and they... Is that also on company time? No, you're not in charge of... In this Peterson, in this case... So it's not the case, as TJ Maxx suggested, that everything you do when you're on a business trip is on an employee's time? That is correct, and I think it goes back, Your Honor, to... What then is the dividing line here? I'm sorry, I didn't... What is the dividing line? I'm not understanding what the rule is that you violated. Sure, and I think it goes back to your original question when we started the argument, and I believe it was something along the lines of, to what extent can the court second guess the company's judgment? And I believe the Montana Supreme Court has answered that question, and since 1991, it's had at least two cases talking about employer decisions when it comes to managers and that there's broad discretion. Let me ask you this. I'm gonna give you a description of a state of facts that I'm not asking you to agree were the facts, but it's a description of a state of facts that I think is at least permissible for a jury to conclude were the facts, given the evidence in front of us. Ms. Peterson takes her employees on this inventory trip to Kalispell. After they finish the inventory work, they go back to the hotel with alcohol that they'd bought previously. They drink alcohol until about three in the morning. There is an underage employee with them who's 19 years old, but Ms. Peterson does not know that he is underage. There's a complaint afterwards by the mother of one of the people who was on the trip. That complaint results in a what happened and so on, and then Ms. Peterson is fired. Ms. Peterson says that drinking alcohol with subordinates on business trips happens. It's happened when she was herself a subordinate employee on a trip to Las Vegas. Supervisor Lattin, who apparently, according to you, did the firing, even though it was Dickey who did the phone call, has a declaration here that says there's strict policy forbidding drinking with subordinates while on business trips, even though Ms. Peterson said, Lattin says, I did it myself with my own subordinates. If all of that is true, that is to say that she was fired after this business trip for the ostensible reason that she drank with subordinate employees after the inspection was finished, that she herself as a subordinate employee drank on business trips, told her that he as a supervisor drank with employees while he was on business trips, and further that Ms. Dickey has a policy of getting rid of older employees, and she's butted heads with Dickey, and she believes, Ms. Peterson believes, that she was fired because of this policy that Dickey has. Is that enough to get the jury? Not under Montana law, because under Montana law, the court, and this is even in the Sullivan case, and this is a quote, Montana employers possess broad discretion to terminate managerial employees if she fails to fulfill her job requirements, or if the employee believes, employer believes, it cannot trust her as a manager to run the day-to-day operation. Let's say that there is a possible reason for firing that's reportable under Montana law, but the real reason has nothing to do with it, and she's fired for a reason that is not good cause. Does Montana law allow us to look to the real reason? Yes, Montana law does allow you to look at pretext, but I'm giving you a pretext case, where under her testimony, under her evidence, the real reason she was fired was that Dickey was trying to get rid of older employees, and specifically her, because they butted heads. I do not believe that the hypothetical that you've given is, would be sufficient for a pretext case. Because there's insufficient evidence to support it? That, and looking at the facts of, under your hypothetical, I mean we have a manager. My hypothetical, Ms. Dickey had me fired because she wanted to get rid of me because we butted heads and because I was old. She used the drinking on this trip as an excuse to do it. That's her testimony. Yeah, but I think we'd have to suspend reality for the jury to believe that, because it's undisputed that the call came in from the mother. Yeah, sure. And Ms. Dickey, there's no, I got an excuse. Yeah, there's no, well there's no record evidence that obviously she was, that Ms. Dickey was behind that. And then frankly, Ms. Dickey turned the investigation over to Mr. Lattin, and there's no, nothing in the record, or even your hypothetical, that Mr. Lattin has any ax to grind whatsoever with Ms. Peterson. So you can't even go along the, you know, cat's paw theory that somehow Mr. Lattin was provided bad information by, you know, Ms. Dickey, and he relied upon it, and it was somehow motivated by Ms. Dickey's dislike for Ms. Peterson for whatever, whatever reason. I don't think a pretext argument flies on the record or the hypothetical. Even if you believe Ms. Peterson, just isn't there. It's just not there. I mean, and it wasn't raised, it's waived, and it's not there, even if it wasn't waived. I thought pretext was raised in the district court. The district court has it in his opinion that was not raised by the appellant before this court. I'm still on the cause. You said there are four Montana Supreme Court cases. Do any of them deal with off-site misconduct? They do not, but I do not believe that you're going to find a, and that's, that's a question asking for, is there a fact pattern similar to... I asked you a question. You answered it. No, yes, there is not, Your Honor. Okay. What's the role of the... What's your best... I'm sorry. No, I'd just like to know, in this context, what's the role of the Montana statute that eliminates off-duty drinking as an element of good cause? Sure, it is the element of good cause, but if you actually look at the, good cause statute, I think is 39-2-903, and it goes to the good cause definition, which is section five. It does say the legal use of a lawful product by an individual off the employer's premises during non-working hours is not a legitimate business reason, unless the employer acts within the provisions of 39-2-313, three or four, subsection three or four. And if you go to 39-2-313, subsection three A1, it says it does not apply to effects in any manner on an individual's ability to perform job related, job related employment responsibilities, or the safety of their employees. And we submit that, and as one of the justices mentioned during the last presentation, that she wasn't just simply fired for drinking on the job. Justices, and what last presentation? Here, and with the appellate was, I believe a statement was made, which I agreed with, that... I'm sorry? I believe a statement was made in the presentation of the appellant, a statement by one of you all. I'm sorry, I can't remember which one, but the, that the record shows... One with the black robe. Right, one with the black robe, and the... Are you talking about the prior case? No, I'm talking about this case, 10 minutes ago. The answer to my question? I'm sorry, yeah, the answer to your question... It's not your fault. I'm sorry, the answer, the answer to... The black robe. The answer, the answer to your question is, there is an exception in the 39-2-313-3A1, and that she was... Ability to perform job related employment responsibilities, that's what you're relying on? Right, and... And that's when you got started spinning off in the last presentation and all that, and I had no idea what you're talking about. What is it showing here that this impaired her ability to perform... Was there evidence that she was drunk on the job? No. Was there evidence that she was inebriated and insulted a supervisor or a customer, anything of that sort? No. How does this exception apply, the one that you're trying to explain? The Indiana Supreme Court gives employers broad discretion to interpret their policies, we've submitted the Code of Conduct, the conflict... We have a statute here, and you've asked about the statute, and you said, oh, the statute has exceptions. And the exception you pointed to is, it impairs her ability to perform her job duties. And tell us how it impaired her ability... Her drinking impaired her ability to... Sure. How do those cases relate to this statute? Because Judge Skidzynski asked you whether those cases involved off the job conduct. They did not, but how it impaired her ability to perform her job. She was sent to Kalispell to do an inventory, to supervise eight subordinates, to lead her team, which that's what TJX... Just to be clear, they finished the inventory before they started drinking. They did finish the inventory. Before midnight, right? Right. So they're gonna party, they didn't party as they were doing the inventory or before they were doing the inventory, so she was done with the job part of the trip. Sure, she was done with the job part of her trip, but I don't think that when you are on a business related trip, TJX made the decision... You're working the whole time. She was... It says, the statute by its terms says it protects drinking during non working hours. So your theory is that she was on 24 7 as long as she was on this business trip. Sure, she's responsible for her subordinates, that she's there, and I think this is more of a common sense case. If an employer cannot terminate a employee, a manager, who behaves in the manner that she did, on the record that's before the court, then frankly it would lead to absurd results. As long as... What she's basically saying is, I was drinking, so therefore I can do what I wanna do because Montana law protects me, which would be an absurd result, and that's not where... Is this one of those latches-ish arguments that losing lawyers make before they sort of... It's an absurd result. Look, we're dealing with statute here. The statute says it has to impair her ability to do her job. I have asked you, and I'm giving you now, and Judge Fisher has also asked you, and I don't... I have yet to hear an answer as to which of her job functions her drinking impaired. Sure. Number one, to lead her team, to have the respect of the team. I'm sorry, when you say lead her team, the job part of the trip was done. So it's not that I can impair her ability to lead them in doing inventory. You mean to lead them back to home base? You mean like they... So using Google Maps or something, she's sort of the leader in that sense? Well... What? Having breakfast? Sort of leading and having breakfast? Well... None of us... None of us... What function was she impaired in doing? When you have an employee who's concerned enough to reach out about her manager's behavior, to reach out and call her mother and wondering if her mother should come pick her up several hours away because of her manager's behavior, I think it's within TJX's discretion to say, I don't want someone like that being a manager at my job. You don't need to get drunk for whether it's two hours or five hours with four of your subordinates, one of whom is underage. Was there fact that she was drunk? The fact that... The evidence says that she was drinking. So you're right. There's no evidence in the record that she was legally inebriated. Counselor, you are standing there and you represent what the record says. And when you throw out a word like drunk, you're really misrepresenting the record. You're misrepresenting the court, what's in the record. You know perfectly well she wasn't drunk. She had five beers, right? I do not know perfectly well whether she was drunk or not. What I do know, what the record does show, is that at least a year ago, she had five beers, and that everyone consumed alcohol, and that the manager of the hotel reported... Judge Fisher just gave you the answer. She says in her deposition, I had five beers. And you can say that drunk, not drunk... I don't know. I'm not a... I assume, but again, I can't say in the record that... I mean, she did have several beers, but... She said five. Yeah. I mean, if she had five beers from 1 a.m. to 6 a.m., she's probably not drunk. If she had five beers from 1 a.m. to 3 a.m., she probably is drunk, but I... Legally, but I can't answer that question. Is there any evidence she was driving drunk? No. She wasn't stopped along the way? No. No ticket? No. No accident? None. Okay, thank you. Thank you. If I just may address a few things that were stated. Once again, T.J. Maxx has cited to one particular exception that I believe its prior interpretation of its own policy demonstrates does not apply in this case when discussing non-working hours. Montana Code, Annotated 39.2.3.13, discrimination prohibited for use of lawful products during non-working hours, exceptions they cite to affects in any matter an individual's ability to perform job-related employment responsibilities. That's what we've just been talking about. Certainly, and I believe... I just wanted to put that out there. I believe that their prior acts in having other employees drink with subordinates... Their acts is one best Latin statement that he's done it multiple times? We have Dennis Latin, we have Cindy drinking with her management on at least two other business trips. And so I think that that demonstrates that they don't believe... They don't follow their policy. But the question is whether or not you come within the statute, or they come within the statute, exception to the exception, on the theory that the policy clearly says that a person who comes in and leads by example, and part of her responsibilities is to make sure that the... A set a good example, and that her subordinates follow the rules. And I believe... And you say that duty ends, or those responsibility ends when they are done with the inventory on a business trip, where they are in a town where they're all, you know, in a hotel where they're clearly identifiable as outsiders, perhaps, and that they may well be... That they're, in effect, representing T.J. Maxx on the road. You don't think an employer could be concerned that the supervisor in charge of this work party is participating in sanctioning this kind of rowdy behavior that wakes up one of the other employees on the trip and causes her to call her mother? You don't think that would be a violation of the duties of a supervisor? I don't believe that the record reflects that she woke up the other employee. It said they couldn't get to sleep. Yeah, so it didn't wake her up because she never could get to sleep. Okay. You ever been in a hotel room next door to the party going on that's loud and noisy? I have, Your Honor, and I've notified the front desk. That's exactly right. If you knew it was the people with their badges on from that convention or that conference that was in the lobby downstairs, you think ill of whomever they were identified with, correct? I'm not saying these employees did, but... Under that hypothetical, I presume I would. I don't think that the facts... I think there's at least an issue of fact as to whether that conduct was engaged in. In fact, the only support that we have to support that is Penny Dickey's statements about other people's statements, which would be inadmissible hearsay and shouldn't be relied upon by the district court anyway. Well, you got other statements about drinking. I mean, you've got several handwritten statements in the record. I agree entirely with that. I'm talking about whether people were drunk, whether people were rowdy, whether there were issues. Certainly, Ms. Dickey didn't consider that there was enough of an issue to actually call up and talk to Cindy Peterson that night or to ensure... If she presumably thought that she was drunk, one would assume that she would also call up before she left to assess her level of intoxication to make sure that she wasn't driving the employees home in an inebriated level. Okay. Thank you. Thank you. Patients are able to stand submitted. We are adjourned.
judges: Kozinski, Fletcher, Fisher